# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

GUS A. McCOVERY, AIS 150038,  :

  Petitioner,      :

vs.          :  CA 11-0553-CG-C

TONY PATTERSON,    :

  Respondent.

## REPORT AND RECOMMENDATION

Gus A. McCovery, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is challenging the validity of his March 7, 2007 first-degree robbery conviction in the Circuit Court of Baldwin County, Alabama; he was sentence to life imprisonment without the possibility of parole, pursuant to Alabama's Habitual Felony Offender Statute, on May 3, 2007. The Alabama Court of Criminal Appeals affirmed McCovery's conviction and sentence by unpublished memorandum opinion issued on January 18, 2008. *See McCovery v. State,* 21 So.3d 799 (Ala.Crim.App. 2008) (table). Petitioner's application for rehearing was denied, *see id.,* and his petition for writ of certiorari was denied by the Alabama Supreme Court on April 11, 2008, *see Ex parte McCovery,* 31 So.3d 174 (Ala. 2008) (table).  A certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals that same date, April 11, 2008. (Doc. 6, Exhibit 6.) McCovery filed a Rule 32 petition in the Circuit Court of Baldwin County, Alabama collaterally attacking his conviction and sentence on February 2, 2009. (Doc. 6, Exhibit 7, PETITION FOR RELIEF FROM CONVICTION OR SENTENCE, at 1.) The trial court summarily denied McCovery's collateral petition, without conducting a hearing, by

written docket sheet entry dated June 18, 2009. (Doc. 6, Exhibit 7, Case Action Summary Sheet.) The Alabama Court of Criminal Appeals entered an order dated April 13, 2010, remanding the collateral petition to the trial court for a merits determination on two claims of ineffective assistance of trial counsel raised by McCovery. (Doc. 6, Exhibit 11.) An evidentiary hearing was conducted by the trial court on May 27, 2010 (Doc. 6, Exhibit 12, Rule 32 Transcript) immediately after which the trial court entered a decision on the record (*id.* at 39-40) and by written entry on the docket sheet (Doc. 6, Exhibit 12, Case Action Summary Sheet, at 2). The Alabama Court of Criminal Appeals affirmed the trial court's judgment by unpublished memorandum decision issued on July 16, 2010. *See McCovery v. State*, 84 So.3d 1016 (Ala.Crim.App. 2010) (table). Petitioner's application for rehearing was denied almost a year later on May 13, 2011, *McCovery v. State*, 107 So.3d 229 (Ala.Crim.App. 2011) (table), and the certificate of final judgment of affirmance was entered on August 5, 2011 (Doc. 6, Exhibit 14).

In his petition before this Court, filed September 13, 2011 (Doc. 1, at 13), McCovery raises nine instances of alleged ineffective assistance of trial counsel (Doc. 1, Attachment, at 1-9) and, as well, contends that his appellate attorney was constitutionally deficient in failing to challenge his trial counsel's performance on appeal (*see id.* at 10-11). Respondent admits that petitioner has exhausted his state court remedies (Doc. 6, at 22) and effectively argues that all of petitioner's claims of ineffective assistance of trial and appellate counsel have no merit (*see id.* at 24-29).

This cause is before the Court on the petition (Doc. 1) and respondent's answer with attachments (*see* Doc. 6). A careful review of the record has been completed and it

is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required.[1]

## FACTUAL BACKGROUND

Janet Cogswell was employed at the Lake Forest Shell Station in Daphne, Alabama on January 27, 2006 when it was robbed early morning by a 6' to 6'2" black male wearing a dark shirt, tan pants, and a baseball cap embossed with a number. (*See* Doc. 6, Exhibit 1, T.T. 117-121.)[2] The robber kept his right hand under his shirt and shook it, all the time telling Cogswell "'Don't make me hurt you with this; I'll hurt you with this.'" (*Id*. at 118.)[3] The robbery, which netted the robber $50.90 (*id*. at 142), was

---

[1]    Accordingly, the undersigned **REAFFIRMS** the earlier denial of petitioner's motion to appoint counsel and for evidentiary hearing (Doc. 8; *compare id. with* Doc. 7 (motion to appoint counsel and motion for evidentiary hearing)). *See Means v. Secretary, Department of Corrections*, 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted)), *cert. denied sub nom. Means v. Tucker*, ___ U.S. ___, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012).

[2]    Police recovered a baseball cap, with the assistance of tracking dogs, about a mile or mile and a half from the Lake Forest Shell Station "sitting in the intersection of North Main Street and Windsor Drive." (*Id*. at 139; *see also id*. at 133-140.) The baseball cap was identified by Cogswell as the one being worn by the robber both on the date of robbery and then at trial. (*Id*. at 121-122.) During the investigation, police learned that the baseball cap belonged to the defendant's wife, Wendy McCovery, who was incarcerated at the time of the robbery. (*Id*. at 148-149; *see also id*. at 162.) Ultimately, the lead detective assigned to investigate the robbery, Jason Vannoy, obtained saliva samples from both McCovery (*id*. at 177 (obtained pursuant to a search warrant)) and his wife (*id*. at 178 (obtained by consent)). Donna Gibbons, a forensic biologist with the Alabama Department of Forensic Sciences, performed DNA testing of the baseball cap and the buccal swabs from McCovery and his wife and calculated "a statistical estimate of the significance of the match between the DNA types found on the hat and the Defendant's known swabs[,]" as well as the known swabs of his wife. (*Id*. at 225-226; *see also id*. at 211-224.) "Gus McCovery could not be excluded as a ***possible*** contributor to the DNA profile obtained from this mixture of 8 loci. Approximately 1 in 565 random Caucasian individuals and 1 in 200 random unrelated African individuals would have a DNA profile that would be included in the mixed DNA profile obtained in item one at these 8 loci." (*Id*. at 226.)

[3]    Cogswell testified that she told police that she thought the robber "had a gun from the way he had his hand in his pocket and by his side." (*Id*. at 127.) Defense counsel attacked the State's case with respect to whether the robber was armed with a gun based upon
(Continued)

caught on camera (*see id*. at 113-114 & 143-146). Cogswell viewed videotape of the robbery on January 27, 2006 (*id*. at 120), as did Detective Vannoy (*id*. at 162-163) and Officer Jeffery Sulzman (*id*. at 208). Both officers recognized and identified the robber as Gus McCovery. (*Id*. at 163 & 208.) Thereafter, Detective Vannoy compiled an array of six photographs of black males of approximately the same age, height and weight (*id*. at 169) and showed the array to Cogswell at 12:40 p.m. on January 27, 2006 (*id*. at 168). From the photo array, Cogswell selected photograph number 2, McCovery's photo. (*Compare id.* at 124-126 *with id.* at 170.) Cogswell selected photograph number 2 because she "was positive that was him[]" and she also identified McCovery during the trial as the person who robbed the Lake Forest Shell Station on January 27, 2006. (*Id*. at 124.) Detective Vannoy obtained a warrant for McCovery's arrest and arrested him at an unidentified residence in Daphne on January 27, 2006. (*See id*. at 171-173.) McCovery was interviewed by police and specifically denied robbing the Lake Forest Shell Station. (*Id*. at 175; *see also id*. ("[He stated] that he was home in bed until approximately 11:00 a.m.").)

Following conclusion of presentation of the evidence, the trial court charged the jury with respect to the indicted charge of first-degree robbery (*see id*. at 248-250), as well as the lesser-included offense of third-degree robbery (*see id.* at 241-242 & 251-252), but refused to charge the jury on theft of property as requested by defense counsel (*see id*. at 236-239 & 258-259).[4] McCovery was convicted of first-degree robbery in the Circuit

---

Cogswell's failure to make mention of a gun in her written statement given to police at 5:49 a.m. on January 27, 2006. (*See, e.g.,* T.T. 196-198 & 203-205.)

[4] "The Defense objects to the Court's denial of the Defense's request for the instruction of lesser included offenses of theft of property in the first degree and theft of (Continued)

Court of Mobile County, Alabama on March 7, 2007. (*See id.* at 260.) On May 3, 2007, petitioner was sentenced to life imprisonment without the possibility of parole pursuant to Alabama's Habitual Felony Offender Statute. (*See id.* at 264 & 266.)

On appeal, McCovery's appointed appellate counsel filed a motion to withdraw concurrent with the filing of a "no merit" brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). (Doc. 6, Exhibit 2.) In the context of the appellate brief, appointed counsel set forth reasons why three potential appellate issues—namely "sufficiency of the evidence, refusal to give [a] jury instruction on Theft in the Third Degree, and whether the sentence imposed was within the proper range of punishment[]" (*id.* at 5)—were not meritorious (*see id.* at 12-16). Following receipt of appellate counsel's *Anders* brief, the Alabama Court of Criminal Appeals extended to McCovery an opportunity to advise the court of "each and every point or issue" he wanted "considered in []his appeal." (Doc. 6, Exhibit 3.) McCovery filed a *pro se* brief and therein raised the following issues: (1) whether the evidence was sufficient to sustain the conviction for first-degree robbery; (2) whether the trial court abused its discretion in giving the State's requested charges 1-4 and 6; and (3) whether the trial court abused its discretion in sentencing him to life without parole in absence of consideration of the life with parole alternative. (Doc. 6, Exhibit 4.) The Alabama Court of Criminal Appeals affirmed McCovery's conviction and sentence by unpublished memorandum opinion entered on January 18, 2008. *McCovery v. State*, 21 So.3d 799 (Ala.Crim.App. 2008) (table).

---

property in the third degree." (*Id.* at 258; *compare id. with id.* at 239 ("THE COURT: . . . I'm going to deny your motion for a lesser included offense of theft of property.").)

> Appellate counsel filed a brief and motion to withdraw in substantial compliance with <u>Anders v. California</u>, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). In his brief, counsel asserted that there were not any real issues to present on appeal. The appellant filed several pro se issues for our consideration. After thoroughly reviewing the record and the appellant's pro se issues, we have not found any error that requires reversal. Accordingly, we affirm the trial court's judgment.

(Doc. 6, Exhibit 5, at 1-2.) McCovery's application for rehearing was denied, *McCovery, supra,* 21 So.3d 799, as was his petition for writ of certiorari to the Alabama Supreme Court, *Ex parte McCovery,* 31 So.2d 174 (Ala. 2008) (table). The certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on April 11, 2008. (*See* Doc. 6, Exhibit 6.)

On February 2, 2009, McCovery filed a Rule 32 petition in the Circuit Court of Baldwin County, Alabama collaterally attacking his conviction and sentence. (*See* Doc. 6, Exhibit 7, PETITION FOR RELIEF FROM CONVICTION OR SENTENCE.) Therein, petitioner asserted numerous instances of alleged ineffective assistance of trial counsel—all of which he asserts in his federal habeas corpus petition—namely: (1) trial counsel failed to investigate the facts and circumstances of the case and discuss them with him and failed to call witnesses in his defense (i.e., Mary Walton who would have testified that while he was incarcerated on the first-degree robbery charge, police officers came by her house looking to arrest him on theft of property charges; and Penny Singleton who would have testified that she was with petitioner at his house, along with Harold Joiner and Pimdon Jordan, at the time of the robbery); (2) trial counsel failed to seek to suppress the photographic lineup as impermissibly suggestive; (3) trial counsel failed to inform him of the State's plea offer and discuss that offer with

him;[5] (4) trial counsel failed to inform him that it was his fundamental right to testify in his own defense and refused to allow him to testify; (5) trial counsel failed to move to exclude State's Exhibit 4—the baseball cap—on the grounds that the chain of custody was not established; (6) trial counsel failed to file a motion *in limine* to exclude any testimony and evidence regarding petitioner's wife on the ground that it was protected under the husband-wife privilege; (7) trial counsel failed to move for a mistrial on the basis that a juror failed to answer questions truthfully during *voir dire*; (8) trial counsel failed to challenge the admissibility of the forensic evidence; and (9) trial counsel failed to request a lesser-included instruction on theft of property in the first degree. (Doc. 6, Exhibit 7, Attachment to Rule 32 Petition, at 2-14.) As for appellate counsel, McCovery contended in his Rule 32 petition—as he does in his federal habeas corpus petition— that appellate counsel was constitutionally deficient in failing to challenge trial counsel's performance on appeal. (*See id*. at 14-15.)

On June 18, 2009, the trial court summarily denied McCovery's Rule 32 petition. (Doc. 6, Exhibit 7, Case Action Summary Sheet, at 1.) "Issues could have been or were raised at trial or on appeal[.] Petition lacks specificity and Petitioner has failed to establish 1) that either counsel's (trial or appeal) performance was deficient or 2) that Petitioner was prejudiced as a result of any deficient performance." (*Id*.) McCovery filed written notice of appeal (Doc. 6, Exhibit 7, Notice of Appeal to the Court of Criminal Appeals of Alabama) and following the submission of briefs (*see* Doc. 6, Exhibits 8-10), the Alabama Court of Criminal Appeals remanded the matter to the trial court with

---

[5]        On July 20, 2006, the Assistant District Attorney assigned to prosecute McCovery's case sent defense counsel a letter containing the following offer: in exchange for McCovery agreeing to plead guilty to first-degree robbery, the State would agree that a life sentence be imposed. (Doc. 6, Exhibit 7, July 20, 2006 Letter.)

specific instructions (Doc. 6, Exhibit 11).

> Among McCovery's ineffective assistance of counsel claims that
> McCovery presented in both his petition and on appeal, only two grounds
> were pleaded with requisite specificity and may be meritorious: Ground
> One, A: that counsel was ineffective for failing to interview and call alibi
> witnesses: "PENNY SINGLETON, who would have testified that she was
> with the Petitioner at his house with HAROLD JOINER and PIMDON
> JORDAN at the time of the Robbery" (CR. 18-19.), and Ground One, D:
> that counsel refused to allow McCovery to testify. (CR. 21-22.)
>
> .     .     .
>
> Because the[se] two claims . . . were sufficiently pleaded, and may
> be meritorious, we remand this case for a determination of the merits of
> these claims. On remand, the circuit court may conduct an evidentiary
> hearing on this claim or accept evidence on this claim without a hearing as
> provided in Rule 32.9(a), Ala.R.Crim.P. If the circuit court determines that
> McCovery is entitled to relief, it may order such relief. The circuit court
> shall take all necessary action to see that the circuit clerk makes due return
> to this Court at the earliest possible time and within 42 days after the
> release of this order. The return to remand shall include the circuit court's
> specific, written findings of fact; a copy of the State's additional response,
> if any; and a transcript of the remand proceedings, if any, conducted by
> the circuit court.

(*Id.* at 1 & 1-2.)

On remand, the trial court conducted a Rule 32 hearing—on May 27, 2010—and

during that proceeding, McCovery was represented by appointed counsel, Christopher

D. Salter, Esquire. (*See* Doc. 6, Exhibit 12, Rule 32 Transcript, at 1-2 & 5.) With respect to

the two instances of alleged ineffective assistance of trial counsel upon which the

remand order was based (*id.* at 8 ("Q [] And [Mr. McCovery] do you understand that

we are . . . only here for two of those claims today? A Yes, sir, I do.")), McCovery

testified that he wanted to testify at trial in his defense but his attorney told him if he

testified the State could bring up his prior convictions (*id.* at 11) and, furthermore, his

attorney "refused" to let him testify (*id.* at 14). Moreover, according to McCovery, he

gave his trial attorney, Elizabeth Campbell, Esquire, the names and phone numbers for

several alibi witnesses (i.e., Penny Singleton, Harold Joiner and Pimdon Jordan) two weeks prior to trial and she failed to call these witnesses in his defense. (*Id*. at 11-12 & 16-21.)[6] McCovery testified that he did not know he could have informed the trial court that his attorney would not let him testify and that he wanted to testify in spite of his attorney's advice against such course of action and, as well, that he did not know he could speak directly to the court—as opposed to through his attorney—and inform the court that his attorney was not calling alibi witnesses. (*Id*. at 28-29.)[7] Elizabeth Campbell also testified at the Rule 32 (Doc. 6, Exhibit 12, Tr. 29); Campbell stated that McCovery never gave her the names of Harold Joiner and Pimdon Jordan (*id*. at 31) and that the only mention of Penny Singleton was in reference to him driving to an ABC store with Singleton and a Sean Jordan at 10:00 a.m. on January 27, 2006, well after the robbery occurred (*see id*. at 32; *cf. id*. at 34 ("I think at that point [the date of trial], [Penny Singleton] had moved. But it wasn't something that I pursued any further than trying to call her because . . . there was a five hour difference by his account from when he saw her and the robbery occurred.")). Indeed, according to Campbell, it was McCovery's story that at the time of the robbery he was in Mobile with an unidentified woman

---

[6]     According to McCovery, these three individuals would have testified that they were at his house on the morning of the robbery playing cards from 1:00 a.m. to 6:00 a.m. (*Id*. at 12.)

[7]     On cross-examination, McCovery testified that the only document he saw prior to obtaining the trial transcript was the State's plea offer, a copy of which he received from his attorney "like a month and a half after [the plea offer] expired[.]"  (*Id*. at 16; *see also id*. at 15.) According to the terms of the letter sent to petitioner's trial counsel on July 20, 2006, the plea offer expired on August 1, 2006. (*See* Doc. 6, Exhibit 7, July 20, 2006 Letter.) Therefore, based on McCovery's Rule 32 hearing testimony, he received a copy of the plea offer on or about September 15, 2006 (*see* Doc. 6, Exhibit 12, Rule 32 Hearing, at 16), approximately six months prior to his trial (*compare id. with* Doc. 6, Exhibit 1, Trial Transcript, at 1), and certainly could have raised any issue regarding the plea offer during the *Nelson* hearing—a hearing requested by petitioner (*see* Doc. 6, Exhibit 1, T.T. 7-9).

purchasing and smoking crack cocaine. (*Id*. at 31-32.) As for McCovery's allegation that she would not allow him to testify, Campbell testified that she discussed with her client the prospect of the district attorney asking about his prior convictions on cross-examination and though McCovery was not happy about the State being allowed to use his prior convictions against him on cross-examination, he agreed with her assessment that "it would not be in his best interest to testify." (*Id*. at 34-35.)

> THE COURT: Did you at any time tell Mr. McCovery that he could not testify?
>
> MS. CAMPBELL: No, I did not.
>
> THE COURT: Did he ever tell you that he wanted to testify?
>
> MS. CAMPBELL: He wanted to until I informed him that at least four of his eight prior felony convictions, I believed that the State could cross-examine him on those. And through that cross-examination, the jury would know he had been convicted of prior robberies. . . . After that, he did not want to testify.

(*Id*. at 37-38.)[8] Following the conclusion of all testimony, the trial judge entered into the record of the proceedings his findings:

> THE COURT: . . . [T]he Court is going to deny the Defendant's Rule 32 petition on the grounds of ineffective assistance of counsel in that there is no evidence credible to this court that the defense attorney, Elizabeth Campbell, was ever given the names of Harold Joiner or Pimdon Jordan as being alibi witnesses. Also, that the alibi witnesses, or potential alibi witnesses, that were given to Ms. Campbell of Sean Jordan and Penny Singleton, were not in fact alibi witnesses, in that they were not with the defendant at the time of the robbery.
>
> The Court is also considering the fact that the person who robbed the Lake Forest Shell was not wearing any type of mask or covering over the face that would have prohibited somebody or interfered with

---

[8] According to Campbell, she and McCovery discussed the possibility of entering a plea. (*See id*. at 33.) "I told him there was an offer of a life sentence. And he told me that he . . . wanted me to get him a probation offer. He specifically stated that he thought . . . I should be able to get him an offer of 20 years suspended for five years of probation." (*Id*. at 33-34.)

somebody identifying the defendant. The defendant was identified by the victim clerk as being Gus McCovery though, I think, it may have been a photo lineup, but identified in court by the victim clerk as being Gus McCovery.

Also, that law enforcement officers identified Gus McCovery as being the person depicted on the video from the crime scene, and, also, other evidence that placed the defendant at the crime scene.

The second ground of Mr. McCovery's Rule 32 petition that his attorney was ineffective by refusing to allow Mr. McCovery to testify when he wanted to testify does not appear to be credible based on the testimony of both the defendant and his attorney, Ms. Campbell, due to the fact that the defendant had several prior felony convictions, and at least one of those prior convictions was a robbery conviction.

Therefore, this Court is going to deny the Defendant's Rule 32 petition.

(*Id*. at 39-40.) In addition, that same day (May 27, 2010), the trial court entered the

following written findings on the docket sheet:

Testimony [was] taken from the Deft Gus McCovery and Atty Liz Campbell. Atty Campbell testified that she was never given the names of Harold Joiner or Pimdon Jordan as alibi witnesses [and] that the alibi witnesses given by the Deft to her, of Shawn Jordan and Penny Singleton, were not with the Deft at the time of the Robbery. Also, the fact of the Deft being identified by the victim clerk [and] law enforcement and other evidence placing the Deft at the scene[,] the Court denies the Deft's Rule 32 on ineffective assistance of counsel for failing to call alibi witnesses. The Court further denies the Deft's Rule 32 on the grounds the Deft was not allowed to testify when he wanted to, after hearing the testimony of both the Deft [and] Atty Campbell. Deft had prior felony convictions at least one of which was a Robbery Conviction. Based on the testimony today, the trial testimony and evidence submitted at trial and which this Court heard, this Court does not find the Deft's allegations of ineffective assistance of counsel to be credible, therefore[,] the Deft's Rule 32 Petition is denied.

(Doc. 6, Exhibit 12, Case Action Summary Sheet, at 2.)

On return to remand, the Alabama Court of Criminal Appeals affirmed the trial

court's judgment, by unpublished memorandum opinion entered on July 16, 2010. *See*

*McCovery v. State*, 84 So.3d 1016 (Ala.Crim.App. 2010).

In his [Rule 32] petition McCovery claimed that trial and appellate counsel were ineffective. However, all but two of his claims were insufficiently pleaded. On appeal, McCovery reiterates the claims raised in his petition.

Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief. In other words, it is not the pleading of a conclusion which, if true, entitles the petitioner to relief. It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala.R.Crim.P., to present evidence proving those alleged facts.

To prevail on a claim of ineffective assistance of counsel, the petitioner must ultimately prove that (1) counsel's performance was deficient and (2) that the deficient performance actually prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

In Ground One-A, McCovery alleged:

Counsel was ineffective and Petitioner was prejudiced thereby when counsel failed to investigate the facts and circumstances of the case and discuss them with the Petitioner, and failed to call witnesses in Petitioner's defense.

. . . .

Moreover, counsel failed to interview, subpoena [sic] and call [witnesses] in the Petitioner's defense. Three (3) witnesses that Petitioner requested[:] MARY WALTON, who would have testified that while Petitioner was in Jail on this charge, Police Officer[]s came by her house on at least two occasions to arrest the Petitioner for THEFT OF PROPERTY, and when she told them that the Petitioner was in jail, that the Officer[]s satted [sic], that the Petitioner had made bond and had been seen riding around the neighborhood in his truck,

<u>PENNY SINGLETON, who would have testified that she was with the Petitioner at his house with HAROLD JOINER, and PIMDON JORDAN at the time of the Robbery</u>, she further would have testified that Police Officers came by her house looking for the Petitioner, while the Petitioner was in jail, for a THEFT case.

In Ground One-B, he alleged Counsel was ineffective and Petitioner was prejudiced because counsel failed to move to Suppress the identification evidence on the grounds that it was impermissibly

suggestive. This claim was insufficiently pleaded.

In Ground One-C, he alleged that counsel failed to inform and discuss the State's Plea Offer with the Petitioner until after the plea offer expired and the court's deadline for accepting pleas had run. He stated:

there exists a reasonable probability that Petitioner would have accepted the offer of LIFE, rather than take the risk of receiving LIFE WITHOUT PAROLE.

McCovery did not alleged that he would have accepted the plea, and never alleged that he had told counsel he would accept the plea when he learned of it.

In Ground One-D, he alleged that counsel was ineffective because his counsel failed to inform the Petitioner that it was his fundamental right to testify in his own defense, and refused to allow the Petitioner to testify after McCovery ha[d] asked to do so.

In Ground One-E, he alleged that counsel was ineffective because counsel moved to exclude the State's Exhibit 4 on the grounds that the chain of custody was not established. McCovery failed to demonstrate how the purported missing link described in his petition was prejudicial. This claim was insufficiently pleaded.

In claim one F, he alleged:

Counsel was ineffective and Petitioner was Prejudiced[] thereby when counsel failed to seek a Motion in Limine AND OR MOVED TO EXCLUDE ANY TESTIMONY and evidence regarding Petitioner's wife on the grounds that it was protected under the Husband-Wife privilege [sic].

McCovery did not allege that his wife actually testified during the trial. This claim was insufficiently pleaded.

In Ground One-G, he alleged that counsel was ineffective when counsel failed to move for a new trial on the ground that a juror failed to answer questions truthfully during voir dire. He states that the juror failed to answer that she knew him and that he and the juror had an affair in the past. He claimed he informed counsel of this fact, but she said:

that it would be in our favor and besides she was Black.

His claim that could should have made this failure to truthfully answer a ground for a new trial is not meritorious as he and counsel were aware of this fact during the trial. Counsel could not ethically raise this matter in a motion for new trial and apparently made a strategic choice

not to strike the juror.

> Strickland cautions that there are countless ways to provide
> effective assistance in a given case and that even the best
> criminal defense attorneys would not defend the particular
> client the same way. Among the virtually unchallengeable
> tactical decisions left to the judgment of trial counsel are
> determinations regarding the defense strategy adopted at
> trial.

In Ground One-H, McCovery alleged counsel was ineffective because counsel failed to challenge the admissibility of the forensic evidence as it was not based on reliable principles, and methods, and the statistical evidence was unreliable. However, McCovery did not specify what made the evidence unreliable. This claim was insufficiently pleaded.

In Ground One-I, McCovery alleged counsel was ineffective because counsel failed to request an instruction on the lesser included offense of first-degree theft of property. McCovery only pleaded the conclusion that the evidence was conflicting about whether he was armed, but he did not specifically allege facts which demonstrated that a charge on first-degree theft of property was appropriate. This claim was insufficiently pleaded.

In Ground Two, McCovery alleged that appellate counsel filed a "no-merit" brief, pursuant to Anders v. California, 386 U.S. 738 (1967), on the Petitioner's behalf and claimed that had appellate counsel raised the claims specified in Grounds One-A through One-I on direct appeal there was a reasonable probability the results of the proceeding would have been different.

In its motion to dismiss, the State pleaded that McCovery's ineffective assistance of counsel claims were time barred and insufficiently pleaded. The circuit court dismissed the petition on June 18, 2009 . . . .

Among the ineffective assistance of counsel claims that McCovery presented in both his petition and on appeal, only two grounds were pleaded with requisite specificity, Ground One-A: that counsel was ineffective for failing to interview and call alibi witnesses: PENNY SINGLETON, McCovery pleaded that she would have testified that she was with the Petitioner at his house with HAROLD JOINER and PIMDON JORDAN at the time of the Robbery, and Ground One-D, that counsel refused to allow McCovery to testify.

Because the two claims described above were sufficiently pleaded, and might have been meritorious, we remanded this case for a determination of the merits of these claims. The circuit court held an evidentiary hearing and then issued an order with findings of fact. It

found that the testimony of McCovery's trial counsel that McCovery never told her about the alibi witnesses named in the petition, that she had advised against McCovery testifying but that the ultimate decision not to testify was made by McCovery himself, was more credible than McCovery's testimony to the contrary.

When reviewing a circuit court's denial of a Rule 32 petition we apply an abuse-of-discretion standard. When we review a trial court's finding based on evidence the trial court received ore tenus, we do not reweigh the evidence. Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.

Here, the trial court was presented with a credibility choice that it resolved against McCovery.

When there is conflicting testimony as to a factual matter . . ., the question of the credibility of the witnesses is within the sound discretion of the trier of fact. His factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence.

In a Rule 32 petition, the petitioner has the burden of proving by a preponderance of the evidence the facts that entitle him to relief. Here, the circuit court was presented with conflicting evidence and resolved the credibility choices adversely to McCovery.

The circuit court's findings are supported by the record, therefore, these claims are without merit.

In Ground Two, McCovery alleged that appellate counsel filed an Anders brief on the Petitioner's behalf, that his claims in Grounds A-I were meritorious, and that had appellate counsel raised them there existed a reasonable probability that the results of the proceeding would have been different.

Because none of petitioner's claims in Grounds A-I were meritorious, McCovery's claim against appellate counsel is likewise without merit. Counsel would not be ineffective for failing to assert a meritless claim.

For the foregoing reasons, the judgment of the circuit court is due to be affirmed.

(Doc. 6, Exhibit 13, at 2-5 & 6-8 (internal citations, quotation marks, and brackets

omitted).) McCovery's motion for rehearing was denied, but not until May 13, 2011, *McCovery v. State,* 107 So.3d 229 (2011) (table); the certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on August 5, 2011 (Doc. 6, Exhibit 14).

As previously indicated, McCovery filed his petition seeking habeas corpus relief in this Court on September 13, 2011. (Doc. 1, at 13.) Therein, petitioner has perhaps refined slightly the claims of alleged ineffective assistance of trial counsel he raised in his Rule 32 petition filed in the Circuit Court of Baldwin County, Alabama on February 2, 2009, as follows: (1) trial counsel failed to interview and subpoena/call witnesses— namely, Penny Singleton, Harold Joiner, and Pimdon Jordan—in his defense who would have provided him with an alibi for the time of the offense;[9] (2) trial counsel failed to move to suppress the identification evidence on the ground that it was impermissibly suggestive; (3) trial counsel failed to inform him of, and discuss with him, the State's plea offer; (4) trial counsel failed to inform him that it was his fundamental right to testify in his own defense and refused to allow him to testify; (5) trial counsel failed to seek exclusion of State's Exhibit 4 (the baseball cap) on the ground that the chain of custody was not established; (6) trial counsel failed to file a motion *in*

---

[9]     McCovery also contends that one witness, Mary Walton, would have testified that while he was incarcerated pending trial in this case officers came by her house on "at least two occasions to arrest [him] for theft of property and when she told them he was in jail, the officer stated[] that McCovery had made bond and had been seen riding around the neighborhood in his truck." (Doc. 1, Attachment, at 2.) As is clear from the foregoing, Walton cannot be considered an alibi witness and, therefore, trial counsel was not deficient in failing to call her as a witness. To the extent McCovery is trying to suggest that Walton should have been called so that the jury could have inferred from her testimony that petitioner apparently has a "twin" in the community responsible for all the misdeeds the police have looked to him as a prime suspect, such an inference is too thin a reed upon which to base a claim of ineffective assistance of counsel. Moreover, petitioner can establish no prejudice in this regard in light of the identification testimony of Cogswell and two police officers, all of whom identified McCovery as the robber from video taken of the robbery.

*limine* or move to exclude testimony and evidence regarding his wife on the basis that it was protected under the husband-wife privilege; (7) trial counsel failed to move for a new trial on the basis that a juror failed to answer questions truthfully during *voir dire;* (8) trial counsel failed to challenge the admissibility of forensic evidence; and (9) trial counsel failed to request instruction on first-degree theft of property as a lesser-included offense of first-degree robbery. (Doc. 1, Attachment, at 1-9.) In addition to the foregoing, McCovery contends that his appellate counsel was constitutionally ineffective in filing a no-merit brief on appeal, pursuant to *Anders v. California,* when he should have been filing a motion for new trial and challenging trial counsel's performance on the grounds previously stated. (*See id.* at 9-10.)

## CONCLUSIONS OF LAW

In accordance with the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner is entitled to habeas corpus relief "on any claim adjudicated on the merits in state court if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Cox v. McNeil,* 638 F.3d 1356, 1360 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)), *cert. denied sub nom. Cox v. Tucker,* ___ U.S. __, 132 S.Ct. 309, 181 L.Ed.2d 189 (2011); *see also Jones v. Secretary, Department of Corrections,* 644 F.3d 1206, 1209 (11th Cir.) ("[U]nder AEDPA, a federal court may not grant habeas relief on a claim that has been considered and rejected by a state court unless it is shown that the state court's decision was 'contrary to' federal law then clearly established in the holdings of the United States Supreme Court, 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); or that it 'involved an unreasonable application' of such law, § 2254(d)(1); or that it was

'based on an unreasonable determination of the facts' in the light of the record before

the court, § 2254(d)(2)."[10]), *cert. denied sub nom. Jones v. Tucker*, ___ U.S. ___, 132 S.Ct. 590,

181 L.Ed.2d 433 (2011).[11]

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *see*

*Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) ("In addition, a state court decision

involves an unreasonable application of Supreme Court precedent 'if the state court

either unreasonably extends a legal principle from [Supreme Court] precedent to a new

context where it should not apply or unreasonably refuses to extend that principle to a

---

[10]    As amended, § 2254 now provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2).

[11]    The Act presumes as correct all determinations of factual issues made by a State court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

new context where it should apply.'"), *cert. denied*, 534 U.S. 956, 122 S.Ct. 357, 151 L.Ed.2d 270 (2001).

For purposes of this Court's § 2254(d) analysis, this case initially requires the undersigned to consider whether all claims of ineffective assistance of trial and appellate counsel raised by McCovery in the state courts of Alabama were decided on the merits. With respect to most of petitioner's claims of ineffective assistance of trial counsel, of course, the state courts of Alabama determined that McCovery was entitled to no relief because of his failure to sufficiently plead such claims under Rule 32.6(b) of the Alabama Rules of Criminal Procedure.[12] (*Compare, e.g.,* Doc. 6, Exhibit 11 *with id.,* Exhibit 13.) The Eleventh Circuit has recognized that adjudications under Rule 32.6(b) of the Alabama Rules of Criminal Procedure constitute "merits" adjudications. *Borden v. Allen,* 646 F.3d 785, 816 (11th Cir. 2011) ("[A]n Alabama court's consideration of the sufficiency of the pleadings concerning a federal constitutional claim contained in a Rule 32 petition [under Rule 32.6(b)] necessarily entails a determination on the merits of the underlying claim; we cannot construe such a rule to be a state procedural bar that would preclude our review."), *cert. denied sub nom. Borden v. Thomas,* ___ U.S. ___, 132 S.Ct. 1910, 182 L.Ed.2d 778 (2012); *see also Frazier v. Bouchard,* 661 F.3d 519, 525 (11th Cir. 2011) ("[B]ecause a dismissal under Rule 32.7(d) for failure to sufficiently plead a claim under Rule 32.6(b) requires an evaluation of the merits of the underlying federal claim, the Court of Criminal Appeal's determination was insufficiently 'independent' to foreclose federal habeas review. . . . [T]he determination that adjudications under Rules

---

[12] "Each claim in the petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings." Ala.R.Crim.P. 32.6(b).

32.6(b) and 32.7(d) of the Alabama Rules of Criminal Procedure are on the merits comports with this court's precedent."), *cert. denied sub nom. Frazier v. Thomas,* ___U.S. ___, 133 S.Ct. 410, 184 L.Ed.2d 58 (2012). Therefore, with respect to all of petitioner's ineffective assistance of counsel claims "the inquiry turns upon whether the state decision was contrary to or an unreasonable application of *Strickland.*" *See, e.g., Means, supra,* 433 Fed.Appx. at 855, citing *Woodford v. Visciotti,* 537 U.S. 19, 22, 24-25, 123 S.Ct. 357, 358-360, 154 L.Ed.2d 279 (2002).[13]

> First, under § 2254(d)(1)'s "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of facts materially indistinguishable facts."

> Next, under the "unreasonable application" clause, a federal habeas court may "grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts" of the case. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" Importantly, for a federal habeas court to find a state court's application of Supreme Court precedent "unreasonable," it is not enough that the state court's adjudication be "incorrect or erroneous"; that application must have been "objectively unreasonable."

*Frazier, supra,* 661 F.3d at 530-531 (internal citations and brackets omitted); *see also Pair v. Cummins,* 373 Fed.Appx. 979, 981 (11th Cir. Apr. 20, 2010) ("Under the 'unreasonable application' prong of § 2254(d)(1), the habeas petitioner bears the burden 'to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.' 'The question is not whether a federal court believes the state court's

---

[13]     In other words, "[i]t is beyond question that, in addressing the relevant claim, we are dealing with an area of 'clearly established Federal law [under *Strickland*].'" *Frazier, supra,* 661 F.3d at 527 n.12 (citation omitted).

determination under the *Strickland* standard was incorrect but whether, that determination was unreasonable—a substantially higher threshold.'" (internal citations omitted)). The foregoing makes clear that "'[i]n addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision.'" *Means, supra,* 433 Fed.Appx. at 855 (citation omitted).

To prevail on an ineffective assistance of counsel claim, a petitioner/defendant is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[14]

---

[14] Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Adamson v. United States*, 288 Fed.Appx. 591, 594 (11th Cir. July 29, 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385 (2008); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every conceivable nonfrivolous defense.

With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In the context of a claim that counsel was ineffective on appeal, the court must first perform a review of the merits of the omitted or poorly presented claim. The defendant carries his burden of establishing prejudice if the court finds that the neglected claim would have been a reasonable probability of success on appeal.

*Means, supra,* 433 Fed.Appx. at 855-856 (internal quotation marks and citations omitted); *see also Pair, supra,* 373 Fed.Appx. at 981-982 & 982 ("The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's representation fell below an objective standard of reasonableness. The standard is that of a reasonable attorney, not a paragon of the bar or an Aristotle or a Clarence Darrow. Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable. A petitioner fails to overcome that presumption if the challenged conduct might be considered sound trial strategy. . . . Pair must [also] establish prejudice. It is not enough for him to show that his counsel's deficient performance had some conceivable effect on the jury's verdict. Instead, Pair must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome." (internal quotation marks and citations omitted)).

McCovery's numerous claims of ineffective assistance of trial counsel fail.[15] With respect to the two claims which the Alabama Court of Criminal Appeals sent back to the trial court for additional proceedings—that is, McCovery's claims that counsel failed to call alibi witnesses and failed to inform him of his constitutional right to testify and allow him to testify—petitioner merely contends that the trial court erred in making the credibility determinations made on remand, that is, the trial court erred in crediting his trial attorney's testimony over his testimony. (*See* Doc. 1, Attachment, at 1.) However, trial judges are often called upon to make credibility determinations and McCovery cites to no cases supporting his contention that the trial court's credibility determinations were improper. *See Drayton v. McDonough,* 2006 WL 2321002, *5 (M.D. Fla. Aug. 9, 2006) ("Determinations of credibility are best made by the trial court judge, who can assess the demeanor and candor of the witnesses." (citations omitted)). More importantly, there is nothing inherently suspect about the trial court's credibility determinations. *See id.* Indeed, a review by the undersigned of the Rule 32 evidentiary hearing transcript supports those credibility determinations. *Coulter v. Herring,* 60 F.3d 1499, 1503 (11th Cir. 1995) (applying the statutory presumption of correctness under § 2254(d)(1) to credibility determinations), *cert. denied,* 516 U.S. 1122, 116 S.Ct. 934, 133 L.Ed.2d 860 (1996); *see also Baldwin v. Johnson,* 152 F.3d 1304, 1316 (11th Cir. 1998)

_____

[15] Because all of these claims fail, petitioner cannot establish that his appellate attorney was deficient in failing to attack trial counsel's performance on direct appeal. *See Ferrell v. Hall,* 640 F.3d 1199, 1125 (11th Cir. 2011) ("We are hard pressed to see how appellate counsel could have performed ineffectively here if trial counsel had adequately performed its tasks in the first place." (citations omitted)).

(same), *cert. denied,* 526 U.S. 1047, 119 S.Ct. 1350, 143 L.Ed.2d 512 (1999).[16] As a result, the state courts of Alabama correctly determined that trial counsel was not deficient inasmuch as no alibi witnesses existed to call in support of McCovery's defense and the decision that petitioner did not testify during his trial was a joint decision made by McCovery and counsel.

As for all other remaining claims of ineffective assistance of trial counsel, petitioner has failed to establish that the merits decision of the Alabama Court of Criminal Appeals, in particular, was contrary to or an unreasonable application of *Strickland*. McCovery has set forth no facts whatsoever establishing that the photographic lineup shown to Cogswell was impermissibly suggestive (*see* Doc. 1, Attachment, at 2-3),[17] and, therefore, he has no basis to argue (as the Alabama Court of Criminal Appeals implicitly found) that his attorney was deficient in this regard. As for

---

[16]    What strains credulity is McCovery's Rule 32 hearing testimony that he did not know he could inform the trial court of his desire to call "alibi" witnesses and to testify in his defense (*see* Doc. 6, Exhibit 12, Tr. 28-29), particularly in light of his pretrial request for a *Nelson* hearing (*compare id. with* Doc. 6, Exhibit 1, T.T. 7-9).

[17]    *Compare, e.g., United States v. Anderson,* 156 Fed.Appx. 218, 221 (11th Cir. Nov. 29, 2005) ("Although Anderson claims he is the only person depicted with short dread locks, three other photos depict men with fairly short dread locks, and several pictures depict men with hair similar to Anderson's hair in his picture. Moreover, although the men pictured do not have uniform skin color, they do seem to be racially similar, and we have held, 'simply being of a different race or ethnic group from others placed in a lineup does not necessarily make that lineup impermissibly suggestive, especially where the other individuals in the lineup had roughly the same characteristics and features as the accused.'"), *cert. denied,* 547 U.S. 1031, 126 S.Ct. 1597, 164 L.Ed.2d 320 (2006), *with Williams v. Weldon,* 826 F.2d 1018, 1021 (11th Cir. 1987) ("Although Williams technically was the only black man in the lineup, the other members of the group all had similar skin tone and facial characteristics. The group was similar in appearance to the generally consistent descriptions of the robber given by the various witnesses, *i.e.,* a Mexican, Puerto Rican, Hispanic, or light-complexioned black man. We agree with the magistrate's conclusion that simply being of a different race or ethnic group from others placed in a lineup does not necessarily make that lineup impermissibly suggestive, especially where, as here, the other individuals in the lineup had roughly the same characteristics and features as the accused."), *cert. denied,* 485 U.S. 964, 108 S.Ct. 1231, 99 L.Ed.2d 431 (1988).

the claim that his attorney failed to advise him of the State's plea offer, such allegation is not well taken since his trial attorney testified at the Rule 32 hearing that although she informed McCovery of the plea offer, he refused to accept the offer of a life sentence in exchange for pleading guilty to first-degree robbery. (*See* Doc. 6, Exhibit 12, Tr. 33-34.)[18] Trial counsel simply was not deficient in this regard. Turning next to petitioner's allegation that his attorney should have challenged the admissibility of the forensic evidence (*see* Doc. 1, Attachment, at 7-9), McCovery fails to cite to any case law establishing that under the facts of his case the forensic evidence was subject to attack and would have been found inadmissible by the trial court. Accordingly, as implicitly found by the Alabama courts, there was no deficiency in performance in this regard. Finally, the claim that trial counsel erred in failing to request instruction on first-degree theft as a lesser-included offense of first-degree robbery is not supported by the record evidence. Indeed, trial counsel specifically took "exception" to the trial court's refusal to charge the jury on first-degree theft of property (*see* Doc. 6, Exhibit 1, T.T. 258 ("The Defense objects to the Court's denial of the Defense's request for the instruction of lesser included offenses of theft of property in the first degree and theft of property in the third degree.")) and, therefore, there was absolutely no deficiency in performance in this regard.

As for all remaining claims of alleged ineffective assistance of trial counsel—that is, trial counsel's alleged failure to seek exclusion of the baseball cap, her failure to seek

---

[18] The credibility of trial counsel's testimony in this regard cannot be gainsaid in light of McCovery's Rule 32 testimony that he came into possession of the plea offer on or about September 15, 2006 (*see id.* at 15-16)—some six months prior to his trial (*compare id. with* Doc. 6, Exhibit 1, T.T. 1)—and could have informed the trial court that he wished to plead guilty during the *Nelson* hearing (*see id.* at 7-9).

exclusion of evidence regarding petitioner's wife, and her failure to move for a new trial with respect to the juror issue (*see* Doc. 1, Attachment, at 4-7)[19]—McCovery has wholly failed to establish that the result of his trial would have been different had his attorney acted in a non-deficient manner. This is because none of the foregoing errors impact the testimony of Cogswell, Detective Vannoy, and Officer Sulzman that the man who robbed the Lake Forest Shell Station on January 27, 2006 was McCovery.[20]

In light of the foregoing, it is clear to the undersigned that McCovery has not established his entitlement to relief under § 2254(d)(1) (or, for that matter § 2254(d)(2)) with respect to any claims of ineffective assistance of counsel raised in the instant petition.

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. §

---

[19] With respect to this last claimed attorney error, the undersigned finds that petitioner has cited no case establishing that the Alabama Court of Criminal Appeals was wrong in determining that his trial attorney could not ethically raise such a claim in a motion for new trial since, according to petitioner's allegations, she knew of the juror issue during *voir dire* and "apparently made a strategic decision not to strike the juror." (Doc. 6, Exhibit 13, at 4.) Since trial counsel could not raise this issue in a motion for new trial, she was obviously not deficient in failing to file a motion for new trial on this basis.

[20] In addition, the jury could have reasonably inferred from additional testimony by Cogswell that McCovery was armed with a deadly weapon when he robbed the Lake Forest Shell Station. *Compare* Ala.Code § 13A-8-41(a)(1) & (b) ("A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he . . . [i]s armed with a deadly weapon or dangerous instrument[.] . . . Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.") *with Lucas v. State,* 45 So.3d 380, 384 (Ala.Crim.App. 2009) ("In a prosecution for first degree robbery, the robbery victim does not actually have to see a weapon to establish the element of force; his or her reasonable belief that the robber is armed is sufficient. The test to determine whether a person reasonably believes that an object is a deadly weapon is a subjective one. It focuses on the reaction of the victim to the threats of the robber." (internal citations and quotation marks omitted)).

2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied entirely on the merits of an underlying constitutional claim, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id.* at 483–484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot,* includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). With respect to McCovery's ineffective assistance of trial and appellate counsel claims, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2254 habeas petition should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve

encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability as to these claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa,* 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The petitioner's rights were not violated in this cause and that his request for federal habeas corpus relief, pursuant to 28 U.S.C. § 2254 (Doc. 1), should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis.*

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P.

72(b); S.D.Ala. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 12th day of September, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**